United States v. Glenn H.N. Good morning, Your Honors, and may it please the Court, I would also like to reserve four minutes for a rebuttal, if I may, because the government has cross-appealed. Yes. Thank you. This argument is going to seem a little bit like deja vu. There's going to be obviously some overlap, particularly with respect to the sentencing issues, but I will try not to re-plow too much ground and try to have my argument informed by what's occurred already. And I would like to start, if I may, with those four specific guideline rulings that the district court made with respect to the guidelines that the government is challenging. I appreciate you, because we just did sentencing, but I just want to make sure I understand what you're arguing with respect to the convictions. Yes, Your Honor. As I understand it, you're making an argument about the relatedness of the predicates. Not relatedness, Your Honor, continuity. Continuity. Solely continuity. Continuity. Do you have any other argument challenging the convictions? No, Your Honor. Okay. It's a narrow attack on the sufficiency of the evidence on the two RICO counts with respect to open-ended continuity, which is the theory that the government has essentially articulated in the appeal. So you're not challenging the sufficiency of the evidence of the male fraud in the way that we just discussed? No, Your Honor. It was a different trial. Got it. I made different decisions about what to raise. Got it. That's the only substantive challenge that we are making, is that. Can you start with that, if the court wants me to start? No, no, no. I just want to make sure I understood that to be correct. Yes, Your Honor, you're correct. So let me start with respect to the four sentencing issues with loss, which has already been discussed some. Can you just hold on one second? I'm sorry, but I just want to make sure all these people can get seated as quickly as possible. Just please take a seat right away. Thank you. I apologize. Okay, go ahead. This court has said many times recently in Alphys and Prange that the court issues some rigid formulation about loss, particularly in male fraud cases, and adopts a more pragmatic, fact-specific approach. And that's exactly what Judge Stearns did here. He rejected the government's approach, which was, at least at trial, they did ask for $132 from 2006 through 2012. Instead, he said that this was not a fraudulent enterprise admonitio. As he put it, they were too successful for their own good. And he found that beginning in 2010, when orders increased, they began cutting corners and ignoring safety requirements, and that led to this tragedy in 2012. So he limited himself, the district court did, to those last three years. And more specifically, the court limited itself to those, I think there were six different drugs, which were all in this high-risk compounding category, where either they were contaminated, meaning the MPA, or they included expired ingredients. I think Mexitrate was the drug. Or they were subpotent or superpotent. Those were the categories. Or they were made by Scott Connolly, who was the non-licensed technician. So Judge Stearns took those particular categories, which he said were all the potentially contaminated or fraudulent shipments during that period, during the RICO period, and using the government's summary charts, and that added up to $1.4 million. And that was the loss figure that he adopted. On review, obviously the court is well aware of the standard of review, that's not clear either. He had a sensible approach, given the facts of this case. He had sat through not one, but two trials, and that was his determination of loss, and it was a totally appropriate determination, as Judge Lopez I think has already indicated. This case is nothing like that. Gonzales-Alvarez, the contaminated milk case, where the farmer, basically by contaminating the milk, that went into a much larger silo. The whole silo got contaminated, and all of that milk was deemed by this court to be a proper measure of loss. This is much more like, I think, Prosperity is the case, with the Big Dig concrete case, which also happened to be a Judge Stearns case, where there were certain loads of concrete, where old concrete was mixed with new concrete, so it was kind of the bad mixed with the good. And Judge Stearns, actually in that case, the government said the only loss figure should be those mixed batches, those boxed lots, and all the other concrete that was delivered by the same company was not part of the loss calculation. This really is like Prosperity. The shipments that were bad, in the sense that they were fraudulent in nature, were properly, within the RICO period, were properly included in the loss, and that's exactly what Judge Stearns did. Other judges might have calculated loss differently, but certainly what he did was not clear, or it should be upheld. Did he calculate all of the drug, even if some of it was apparently injected in people who did not suffer any of these catastrophic results? Your Honor, he included all of, everything that was within those lots of the drug. So anything within the period of 2010 to 2012 that was in those lots was included in his calculation? Anything that was within a contaminated lot. Not every lot of MPA, because they sent out MPA in 2010 and 2011, there was no indication there was anything wrong with it. So I understand, the only lots that are in his calculations are the ones where the government actually put in proof that this particular lot caused an injury to someone. That there was contamination of the lot, or that they included expired ingredients, or mislabeled ingredients, or mixed ingredients. That there was something wrong with the shipment itself. A nuanced approach. But just so I, we have two shipments, okay? One of them we could say, not contaminated at all. So, this one's contaminated. Does that mean everything in it is contaminated? No, Your Honor, but he counted it. Even if not everything in it was contaminated? Correct. That lot he counted. Doesn't that somewhat help the government's contention that you should have counted this lot too? Because the representation about the integrity of the lot, just as it's false as to some, but not everything in shipment A, is potentially pertinent to shipment B. Because I think this is coming out of a place that's clean when it might not be. Well, in 2010 and 2011, it was much cleaner. I mean, there was no evidence about the specific conditions of the clean room in 2010 and 2011. There was no evidence about... But did he include every lot that came out post-2011? Or did he distinguish among them even then? I believe he only included, with respect to the MPA, I believe he only included the three contaminated lots made in May, June, and August. Those lots in their entirety... Were there any other lots coming out in May, June, and August that he didn't include? I don't have the answer to that, Your Honor. Well, would there be an argument for not including them? The argument would be that there was no evidence that any of those drugs were contaminated. But since the criminal conduct is fraud, wouldn't the misrepresentation be equally pertinent to the uncontaminated lot, just like it's equally pertinent to vials within a contaminated lot that aren't themselves contaminated? Well, I think he made a pragmatic distinction. I think another distinction could be made. But the issue is whether all drugs are worthless. And there's no reason to make a gross finding that every shipment of MPA in 2010, for example, was worthless. People received it. These hospitals and doctors were paid by their patients. The patients received safe and presumably effective treatment, or these places wouldn't have re-ordered more and more and more. So there's no... What he did, I think, was completely reasonable. It was, again, not the only way to do it, but it's not clearly a wrong answer and it should be upheld. Well, when you say it's not the only way to do it, are you suggesting that if he had chosen, he could have done it the way that the government said he should? No, he could not have done it the government way. The government can speak to this. You keep saying this is a matter of clear error. I understand the government could be saying that he made a legal error, that there's an analytic flaw pursuant to the guidelines as to how he analyzed loss. Not a judgment to be made, a pragmatic judgment, as you put it, but there was just a fundamental legal error in the way he did it. Isn't that what the government's saying? Well, of course they want to characterize it that way, because they get a better standard of review. But they have to show that all drugs shipped by NECC for six years were worthless. There's nothing in the record that supports that calculation of loss. To that point, I understand the argument that if the government pressed for a contention about loss, that is not plausible. They can't win on it. Okay? It seems right. Sounds right to me. It's the easiest thing that I've heard today said. But you suggest there might be room for a broader calculation of loss that would not go all the way to everything. So before you say that you're not conceding that point, assume you are conceding in a way, assume you are conceding that point, I'm a little puzzled as to at least your understanding of what the government was seeking from the district court. Such that when the district court rejected it, we now have an appeal from the rejection of that argument. My understanding was below the government argued only for a loss calculation that would sweep in everything. Correct. To the extent the district court was correct in rejecting that, I'm not sure why the government should be able to now on appeal argue for a more calibrated account that would be broader than what the district court did, that it didn't present below. Well, of course they shouldn't, Your Honor. But what was the narrower form of the argument presented to the district court other than all loss? No, Your Honor. What about the chart they say about, they thought the period of criminal conduct was 2006 to 2012, the district court then said no, it's 2010 to 2012. Did they make an argument limited to 2010 to 2012 as a loss number? They didn't, Your Honor. They did not? No. Under their chart, that would be $79 million. Everything they sold for three years. They didn't argue that either. And of course, Your Honor, they are stuck with what they argued below. They can't come in here and say, let's send it back and recalibrate it. They went with what they went with. They could have said, as I think either Your Honor or Judge Stahl suggested, well, what about if there was a shipment of MPA in July, you know, could he have counted that? Well, maybe he could have counted that. But that wasn't proposed to him by the government. And the government has a burden of proof to show loss and what they are asking for below and what they're asking for here should be rejected. And Judge Stahl was correct in rejecting it. And I don't think we should be sending it back to let him figure it out a second time. That's not what appeals are about. He made a ruling, they appealed it on particular grounds, and their appeal is about merit. Can I turn to the other sentencing issues briefly? So the next one is conscious or reckless risk of death or serious bodily injury. And on that one, Judge Strang's found that that's a mens rea component. And in fact, the jury, by not convicting Mr. Chin on the 25 second-degree murder counts, rejected the government's theory that he had acted recklessly or with conscious indifference or whatever formulation of words you want to use. It's essentially the same mens rea. And beyond that, Judge Stern said that he thought the jury's decision in that regard was appropriate, and that he agreed with it. So he could have said, well, even though the jury didn't find beyond a reasonable doubt, I find by preponderance of the evidence that Mr. Chin was reckless, and I'm going to impose those two points. That was not his finding after a six-week-long trial. Counsel, isn't there an argument that Judge Stern's may have elevated the culpable state of mind required by the guidelines to sort of a knowledge of certainty that's not consistent with the reckless disregard of the risk? I mean, the words do matter in a situation like that. I think the government does make the argument that he went beyond what the guidelines require for the culpable state of mind for this guideline. How do you respond to that? Well, the government does argue that, and I would say this circuit has not really parsed the meaning of those words the way that some other circuits have, but most of the other circuits that talk about it do talk about it in terms that are comparable to recklessness, to that kind of state of mind. Is that the state of mind for second degree murder? Well, recklessness in some states can be sufficient, or conscious indifference. Certainly negligence or gross negligence is not enough, and what Judge Stern's found is that that's what was proven here. Does he use that formulation? Which formulation? Gross negligence? I think Judge Stern's does mention the words negligence and gross negligence. I can't cite you the page, but I think that was, in essence, frankly, that's what the defendant conceded or tried, that he was negligent. He got up in opening and said... No, what I'm saying is there's a finding by the district court that all that was shown was gross negligence. Then we would review that for clear error, because there wouldn't be a legal problem about whether he applied the wrong standard. The question is whether what he found was there wasn't enough evidence, even by our preponderance, to meet the second degree murder standard, which would raise the legal question of, is that the right standard to be measuring it against? Well, no. He found the government had not proven, by preponderance of the evidence, that the government had proven that chin acted with recklessness or conscious indifference. Here's what he said, Your Honor. This is from the sentencing. This is page 91 of the sentencing transcript. First, he says that the evidence had not established that, that being wanton and willful disregard of the likelihood that his conduct would result in death or grave bodily harm. It certainly established negligence. It may have even established gross negligence. But as the jury appropriately found, as the jurors found in the Cadden case, the evidence did not establish a reckless and knowing disregard or reasonable certainty of causing death or grave bodily harm. I agree. He used the word certainty, and certainty does not appear in that guideline provision. There's a gap. There's this middle position that he doesn't seem to address in that passage, right? He's got the second-degree murder standard, and he's got gross negligence, but in between it seems to be maybe what the guideline standard is, and there's no statement about measuring it against that standard. I think the language here certainly does not track the guideline. It may have been sloppy, but I don't think it makes his determination based on sitting through the trial and hearing the evidence clearly erroneous, that the government did not meet its burden to prove that Mr. Chinn act with recklessness or conscious indifference. Did you have other sentencing? The other sentencing issue, or two more, the vulnerable victims. And I agree with Judge Lopez, it's counterintuitive to not think of these poor patients as victims, but what the case law says is there has to be a showing approximate cause. And what Judge Stearns said in addressing this is with respect to the fraud counts, which is what we're talking about here, that while there was certainly but-for causation established with respect to the patients, that there was not proximate cause. There was no evidence that any of these patients had relied on these representations, and that he was unable to find that they met the definition of victims under that provision of the guidelines. And moreover, as far as vulnerable goes, the government did not prove that they were vulnerable victims because, I think, as Mr. Singel correctly pointed out, it would sweep too broadly if any medical patient, whoever received some medication, is deemed to be a, quote, vulnerable victim under that guideline. It's very different to this court's decision in Stella, which was the nurse who was basically taking drugs out of a patient's drip bag and using them for herself. She was a care provider. She was directly interacting with the patient. And the district court in that case, in Stella, really did a very nuanced approach. The district court didn't say, everybody's a vulnerable victim. The district court looked at particular victims of the defendant in that case and said, because of their interaction and their relationship and the patient's direct dependence on the nurse as care provider, that qualified as a vulnerable victim. And the last one is the leadership. And certainly, it was well within the judge's discretion to say that Mr. Chin, who was an employee, who was a supervisor, but not a decision maker in this overall operation, took orders from Cadden. Certainly, his determination that he was a three points for leadership, not four points for leadership, was not clearly erroneous. Thank you. Good morning again, Your Honor. Steve Lieberman for the United States. I just want to strip flag the sufficiency count. I'm happy to rest on my briefs, but I also answer any of the court's concerns regarding the sufficiency evidence challenge for the regal predicates in this case. I'll go straight to sentencing and try not to double back to my arguments with Mr. Cadden. On the top line question, the standard of review, this court has said Gonzales-Alvarez and Nacho that the district court's top line loss calculation method, what is the appropriate method of calculating loss in a particular case? That's de novo. Even if we assume that, what's your answer to your opponent's contention about the nature of the argument you made below and that you're stuck with it? The nature of the argument we made below was 2006 to 2012 was the racketeering period, and we wanted all those drug sales. The district court wanted all sales? Yes. Not just high-risk drugs? Yes, all sales. From NACC? Yes. Understanding that that's what the record shows, that this issue of creams, I don't want to double back. Your argument now is all sales a more limited period of time. Is that your position? The district court found that the limited racketeering period was 2010 to 2012. We disagree with that, but that finding that it was a narrower racketeering period was a factual finding and we don't think we can meet the clear error standard so we're stuck with that narrower period. Does that mean you're now asking for $79 million to be the loss? Again, I charted this all out in the brief. They just represented to us that the chart tells us that for that period it's $79 million. You're on appeal asking for it to be $137 million. Again, the numbers are all mixed up in my head at this point. If I could submit a short clarification letter just to say what our numbers are. I don't want to misspeak. I think you're stuck with whatever you represent in the brief. Yes. We are stuck with that narrower time range from the district court because we can't meet the standard. Anything before 2010 we can't meet the clear error standard. Our argument on appeal is that the district court even with that narrow period had an analytical flaw in calculating loss. That goes back to our arguments across both cases. Did you raise to the district court the argument that if he thought did you have a chance to raise this argument once he defined the period as 2010 to 2012 that it was everything for that time period alone? Or did you just stand on the number that you had given him based on 2006 through 2012? I honestly don't remember. It was a long sentencing transcript and he announced his factual finding there. I don't remember exactly what we said with respect to that narrower period. We don't contest the factual finding. We contest the analytical the nature of the loss calculation which we contend is a legal determination with how you calculate that loss during that narrow time period. I think the Anacho case which the parties have both referenced provides a helpful framework for that which is what would the value of the drugs been if all this information was out in the open and the government's contention is no hospital, no clinic would have purchased any of those drugs during the 2010-2012 time period. They are therefore worthless. Didn't you make a broader argument that they would not have purchased anything from these people if they knew that these particular drugs were not sanitary contaminated? Yes, the representation this fraud involved representations by the enterprise. All our formulations are USP compliant. We have a state of the art lab. We hire the best people. We do all the testing. Our point is that no... You argued for a loss number even as 2010-2012 that affected products that didn't have to meet USP standards. That's just yes, right? So that's the question. The force of the question is given that's what you argued to the district court judge insofar as that's wrong how can you then win? Because he was correct to reject it. And if the idea was he was correct to reject it on background but there was a narrow argument which you could have won then the solution to that is to present that argument to the district court and then appeal it if he gets that wrong. I think it's a sequencing. The first analytical step in this appeal is how do you calculate loss in this setting? That's how the government appeals. Once you determine the loss of the delta, we can then have an argument which is factually about what that delta should be with respect to each with respect to these products. But before you even get to any of those disputes you have this threshold question. What is the appropriate loss calculation? Because that's a legal question. And that's how all of this court's cases start out. The top line loss calculation method de novo. What's the loss? What's the delta? What's included? What's not? Those are factual findings that you don't get to until you resolve the top line legal question. And the Anacho case analytically provides what we think is a helpful framework. Put these drugs out. Put the drugs out. And what was what would anybody have paid for them in 2010 to 2012? Remind me, Judge Stearns distinguished that case. So he thought that was actually very different to what we have here. What was his what was the difference he articulated? He said, he had a couple. He said well that had to do with internet pharmacies there's no market for after, or sales after a sale to an internet pharmacy that case didn't involve deliberate sabotage of the products or excuse me, this case didn't involve deliberate sabotage of the products so that's how he distinguished all of our cases. Our point here is that we have a manufacturing process and that's no different than the cases that we cited in our brief about sabotage of the products contents. A few minutes ago you used the word these. I'm not sure what you meant by these. Do you mean just the contaminated drugs or all of the drugs? All of the drugs. So these means anything they produced during this period. And it goes back to your sentencing argument. I gather that once you do that, you have to take all of it into consideration and then his failure was he segregated the actual bad drugs from the rest of the drugs and that's why the sentencing calculus is incorrect. Am I correct? You are correct. You provided evidence that the process from your view was contaminated but many of the products of that process were not contaminated. And that's really what Judge Stearns is saying. Maybe it's just good luck but whatever it was the vast majority of products that they were manufacturing were just fine. There were no ill consequences from that and so they're not violent. I have trouble understanding what's wrong with that argument. I think the guidelines commentary on the regulatory approval point answers that. That if a defendant fraudulently sells a product that fraudulently makes fraudulent representations I have regulatory approval that this meets regulatory standards for two years. Nobody got injured. Nobody complained. Maybe the product was perfectly fine. The guidelines say the full loss the full purchase price equals the loss amount. The government's argument here is that this is exactly the same thing. We're not dealing with a regulatory agency. Your claim is that all of it was being produced subject to substandard processes even if not all of it was contaminated. Exactly. And he missed that point in your view. Yes. And I understand that argument with respect to the high risk drugs. What is still confounding me and I don't know that I have an answer for it is you kept giving loss numbers to Judge Stearns which included losses attributable to things that they were selling that were not subject to the U.S.B. standard at all. Because you were contending that they were on the hook for everything they sold. And I don't understand what legal theory would entitle you to say that because the loss has to be attributable to criminal conduct. And the only criminal conduct you point to is misrepresentations about U.S.B. standards which only apply to some of the products they sold and not all. What's the answer to that? The answer to that is this only came up in the appeal. We didn't realize You made up the number. You gave him the number. The evidence at trial was that that NECC was distributing high risk compounded drugs. So you're I think I understand you to say is that you proceeded on the understanding that everything that they were producing involved compounding it involved the kind of risks that we see in these drugs that were contaminated to the extent that your assumption was wrong, to the extent that there were other products that were reflected in those gross sales figures, the creams and the ointments it was up to them to point that out and they never did that I think you say we didn't understand that the company was sort of segregated in this way some of these compounding products, others the creams and ointments Isn't that what you said earlier? You thought it was all the same thing that it was compounding You've summarized it much better than I have tried to today I believe, and it's in one of our requirements, this idea of creams and ointments was a passing reference by one witness at trial and that was it So they're the ones who are making this argument for the first time on appeal At sentencing did they make this argument? I don't recall anything in the sentencing record about ointments or creams but the governor will go back and double check Thank you On the reckless risk of death or bodily injury the district court language about the recklessness we pointed that out cross-reference in our brief it's actually almost identical to a jury instruction that he gave on second degree murder and our point is that wanton recklessness is different than the general recklessness standard that the guidelines use I'm happy to rest on our arguments on the vulnerable victims enhancements. We think that these patients were just like the patients in Milstein where the second circuit said that the victims enhancement applies to people seeking treatment for Parkinson's or fertility problems. No ability to detect this type of criminal conduct What about their argument that you have to be able to show that the particular individual is more vulnerable than the normal individuals getting medical care That's not the type of inquiry that I've seen any court conduct In this circumstance would these patients have a reasonable ability to detect the type of criminal conduct here? The answer is no. They walked into hospitals with often debilitating back pain seeking treatment They had no hope of detecting the type of contaminated or substandard medication at issue in this case Isn't your argument that you are really conflating victim and vulnerable You seem to be saying that if they are a victim ergo they are also vulnerable I guess it's their argument you deprive that adjective of all meaning Not at all your honor So we think they are victims because we have factual and proximate causation We think they are vulnerable for the reasons articulated by the second circuit in Milstein that when a patient comes in seeking high risk drugs very powerful drugs that have to be manufactured in accordance with very clear standards they have no ability to detect any sort of criminality in that process That doesn't mean that every fraud case involving the health profession involves a patient as a vulnerable victim The facts here, the circumstances here are identical to Milstein where they are seeking a particular medication for a particular urgent health care problem Thank you I Yes your honor I just want to point out the last issue, the government's cross appeal on the restitution point This is very important to us The victims the patients in this case also qualify as victims for purposes of restitution The district court erred in excluding them from the restitution order by finding that the NBRA requires some sort of direct interaction or conduct This court has held as have all the other courts that have addressed this issue The NBRA requires factual and proximate causation We have that here Thank you Unless there are any other questions I ask that the convictions be reversed on the sentencing and restitution issues Thank you Very briefly your honor Just on the $79 million I want to show the court where that comes from The PSR which is in the government supplemental appendix Page 7 has the chart of NECC's gross sales If you add up 2010 to 2012 It's $79.7 million That's not what they advocated for at sentence If the court looks at the sentencing hearing government's argument at page 7 to 15 They ask for All sales, gross sales by NECC 2006 to 2012 You never made an argument that the $79 million was too broad even if the right period was 2010 to 2012? The $79 million was not before the court What they really did your honor Judge Stearns had found $1.4 million at Cabin's trial And at Chin's sentencing basically the government got up and just attacked that number and said it's not that number It's everything for 6 years There was no discussion of anything more nuanced That's partly their objection They say that $1.4 was based on what they think was clearly a legal mistake as to how they calculated It should have been a broader amount One possibility is that they then are stuck with saying all sales but they're really not stuck with it unless you apprised someone at the time Well, it can't be all sales because that would include things that had nothing to do with the criminal conduct like the lotions If that argument was never made then I don't quite see why the government isn't in a position to now say Well, it was not what it should have been It should have been broader If the only argument is no, it should have been narrower then we can just review that dispute on appeal Because your honor, the government said all sales The defense said There's been no evidence that any of this other stuff is in any way, shape, or form substandard or worthless If they can show that some of it was then you have a problem Their argument is that some of it was because all of it that was high risk drug sales went out under the representation that it was done pursuant to the USP I've been before this court two dozen times where I've been told basically The defendant is stuck with the argument he made below They made below an argument that the lost figure is all gross sales for six years That is not an argument that's supported by the record It is not what the law requires Judge Stearns was correct to reject it and they cannot come in here and make a different argument With sauce for the goose and sauce for the gander If I can't do it, they can't do it That was their argument They asked for $132 million They were not surprised to learn about creams and ointments They called two dozen witnesses from this place They had been investigating this operation for three years They knew everything that they made They had charts all the way up and down the courtroom about what they made and what they didn't make This was not some surprise that all of a sudden it appealed Oh, they made creams and ointments They knew they made 7,400 different products with 78,000 different customers That came out of the CABIN trial long before Mr. Chin was tried or convicted They went with what they went with and they can't come in here and switch arguments before this court So there was no surprise Let me just mention two cases IHINACHO which came up during their argument As Judge Stearns found and that was his case that involved FDA basically representing drugs as being FDA approved which were not FDA approved There's a specific comment in the loss guideline that says if you represent something as being approved by a regulatory body that isn't then you can say it's all worthless So that's not the case here The government concedes it's not the case here And finally Milstein which they cite 2nd Circuit In Milstein the district court did find the drugs were worthless and all the 2nd Circuit said is that it was permissible for the court to find it The 2nd Circuit did not say that's the correct and necessary finding Just as here it was not clearly erroneous for Judge Stearns to make the rulings that he did under the sentencing guidelines Thank you very much We're going to take a recess and we'll be back